**FOSTER v. MOORE–McCORMACK LINES, Inc.**

No. 66.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1942.

Writ of Certiorari Denied Feb. 8, 1943.

See 63 S.Ct. 560, 87 L.Ed. ——.

Jacob Rassner, of New York City (Chas. J. Hyman, of New York City, of counsel), for plaintiff-appellee.

Corydon B. Dunham, of New York City (Eugene J. Davidson, of New York City, of counsel) for defendant-appellant.

Before L. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. The jury having returned a verdict in favor of appellee, appellant contends that appellee failed to prove a prima facie case of negligence. We do not agree. There was sufficient evidence for the jury to conclude that appellee fell into a recess or hole in the ship's fire-room, a hole ordinarily covered by a grating, but which was open, having been left open by appellant, although appellant left the jury in the dark as to why.

The open hole was lighted, to be sure, at some point of time; but, in the light of the verdict, we must take it as true, because there was evidence to that effect, that there was darkness when appellee later approached the open hole. If appellant had, in the first place, left the hole open and unlighted, its negligence would be plain. The darkness and the negligence were dispelled by the light—so long as it lasted. But lights do go out, as everyone knows. Appellant was therefore negligent because it did not show that it exercised due care to see to it that the light continued to shine. Fiat lux (or at least reasonable care in respect of continuing illumination) was an obligation owed by appellant to appellee in the circumstances. If there was an open hole, there had to be due care in maintain-

ing a light. The result would have been different had it been proved, by uncontradicted credible testimony, that it was within the scope of appellee's functions to keep the light on while the grate was open.

■ 2. Without objection by appellant, appellee introduced competent medical testimony to the effect that appellee was suffering from arthritis generally, and that this condition was aggravated by the injury in question. Appellant introduced competent medical testimony to the effect that appellee was suffering from rheumatoid and not traumatic arthritis; the former is an infectious condition while the latter is the result of a blow or force. The trial court, pointing out that there was a conflict of evidence, charged the jury that it could, and must, determine for itself, whether the injury had aggravated the existent arthritic condition, and that, if it did so, appellant would be liable in damages for the aggravation. Appellant objects that this portion of the charge is not "warranted by the evidence," for there could be no causal connection between the injury in question and appellee's subsequent arthritic condition. We cannot agree. There was a conflict of the testimony and it was for the jury to determine the issue of fact. Whether the jury carefully weighed the testimony in the light of the judge's instructions, of course, we do not know, and, indeed, are forbidden to inquire.[1] There was a general verdict, and such a verdict "throws its mantle of impenetrable darkness over the operations of the jury."[2] Appellant might have dissipated that darkness by asking, under Rule 49, Rules of Civil Procedure, 28 U.S. C.A. following section 723c, for a special verdict or for a general verdict accompanied by the jury's answers to interrogatories. A trial judge, sitting without a jury, or an administrative agency, must make findings of fact, and also state the legal rules justifying decisions, yet a jury, which is theoretically supposed to confine itself to nothing but fact-finding, is curiously freed of the requirement to reveal that and how it has discharged its sole legitimate function, unless the trial judge or one of the parties invokes Rule 49. But that wise rule, which would ensure keeping the jury in its proper place, is, for some dark reason, seldom used.

■ 3. Finally, appellant contends that the Suits in Admiralty Act, 46 U.S.C.A. §§ 741, 742, provides the exclusive remedy for any injury appellee sustained, and, since appellee brought his action under 46 U.S.C.A. § 688, the Jones Act, the district court had no jurisdiction. The complaint alleged that appellant had "chartered or leased the aforementioned steamship or vessel known as the S.S. 'Uruguay' from the United States of America." This, in and of itself, is not necessarily an allegation of ownership of the vessel by the United States. But we shall assume that it is, and shall construe the allegation to mean that there was here a bare-boat charter. On that basis, the Suits in Admiralty Act does not apply for these reasons: There would here be no liability in rem against a private owner under the Jones Act, and it is only under the Jones Act that the seaman could recover against a private owner for the injuries for which he is here suing. If a private person owned the vessel involved in this suit and had "leased" it to appellant under a bare-boat charter, the lessor could not be held liable in personam; accordingly the United States could not be held liable in personam. It follows, then, that if the United States were a private person, proceedings against it neither in rem nor in personam could be maintained. Brady v. Roosevelt S.S. Co., Inc., 2 Cir., 128 F.2d 169, is not in point, because there the shipowner was an agent of the United States, and, therefore, the United States would have been personally liable had it been a private person.

Judgment affirmed.

[1] McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Hyde v. U. S., 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Mattox v. U. S., 146 U.S. 140, 13 S.Ct. 50, 36 L. Ed. 917. 8 Wigmore, Evidence (3d ed. 1940) 668-677, 282ff.

[2] Sunderland, Verdicts General and Special, 29 Yale L.J. 253 (1919).