## LUNDY v. CALMAR S. S. CORP.

United States District Court
S. D. New York.
March 6, 1951.

Gorman & Nestor, Francis X. Nestor and John P. Gorman, all of New York City, for libellant.

Mendes & Mount, New York City, Frank A. Bull, Daniel Huttenbrauck, New York City, of counsel, for respondent.

McGOHEY, District Judge.

The libellant seeks damages for personal injuries sustained while serving as third officer of respondent's vessel S.S. Alamar on September 27, 1948, as she was inbound to New York. While standing the 8 to 12 night watch, he entered the upper wheelhouse in the performance of a duty directed by the master. It was almost totally dark, and he stepped into an open hatch which was usually covered. The resulting fall caused him to strike his back on the handle of the engine room telegraph and to land hard in a sitting position astride the edge of the hatch.

At the trial liability was not seriously contested and, in any event, it was clearly proved. The cover had been left off by some crew member who had been working on gear in the hatch. Lundy had no knowledge that such work had been done and no reason to suppose that the usually closed hatch would be uncovered when he came into the darkened wheelhouse. The only issues are the extent of the injuries and the amount of damages. Libellant claims permanent disability. In my opinion he has failed to establish it.

He was forty-nine years old at the time of the accident and had been at sea almost continuously from about 1937. Prior to that he had served in the United States Navy from 1919 to 1923, when he received a medical discharge because of tuberculosis. Thereafter he was treated in a veterans' hospital, and in 1930 his infection was found to have been arrested. In 1935 he was declared cured. It is not claimed that his present condition is due to the tuberculosis. In 1942 he was commissioned an ensign in the United States Coast Guard and licensed as a second officer. He received his chief mate's license in 1944, and at the time of the accident was preparing to take the examination for a master's license. He has not taken it.

After the accident he was immediately relieved from duty and put to bed, and hot water bags were applied to his lower back which he says was paining him severely. Two hours later, however, he went to the bridge and assisted in the ship's navigation. The following morning, September 28, he likewise assisted in the docking maneuvers and when these were completed went to his home in New Rochelle. On October 1, he went to the Marine Hospital in Staten Island where he was declared able to sail but not to do heavy work. He was there advised to report to the Marine Hospital in Baltimore, where the vessel was bound, in order to be examined by Dr. Lane who, he was told, was the Public Health Service's "best man" on back injuries. He thereupon rejoined the vessel at New York sailed on it to Albany, New York, and thence to Baltimore, where he arrived October 7, 1948. He signed off on the ninth,

and entered the Marine Hospital, Baltimore, on the tenth, where he remained for about five and one-half months. He there complained to the doctors of pain in the lower portion of the spine which he said was aggravated by any motions requiring movement of or stress on the spine. He received sedative drugs daily while in the hospital. In addition, from October 18 to December 9, he received eight caudal block injections to relieve pain, at intervals of a week or ten days. He said these treatments helped to alleviate the pain temporarily, but did not eliminate it. Physiotherapy threatments seemed to aggravate the pain and were discontinued.

Despite these various treatments, the libellant still complained of severe pain in the lower back and claimed difficulty in using his right leg. Dr. Lane, who was called as a witness by libellant, then formed the opinion that libellant's condition was due to irritation of the nerve roots between the fourth and fifth lumbar vertebrae, due to compression of the nerve root from the intervertebral disc. He decided to operate. The operation disclosed "evidence * * * that the intervertebral disc material" protruded posteriorly against the nerve. This, the doctor said, "demonstrated some compression on the nerve." The protruding material was removed and the disc sutured. Then an operation was performed to fuse the spine in the region of the fourth and fifth vertebrae and sacrum, by bone graft, "in order to immobilize the joints as much as possible and to aid in carrying some of the weight bearing on the bone graft instead of through the disc itself." On March 4, 1949, he was placed in a body cast. This was removed before his discharge on March 24. He then returned to New Rochelle, New York, where he remained in bed most of the time due, he says, to severe pain. He was again hospitalized at Baltimore from September 24 until November 25, 1949, when he was discharged as "not fit for any duty which would require long standing, stooping, lifting or other types of physical exertion." Subsequent examinations at Baltimore on January 24 and August 15, 1950, resulted in findings that libellant was "not fit for duty." He has done no work since leaving the vessel on October 9, 1948. He still complains of severe pain whenever he moves and claims to be unable to do any work.

Dr. Byron Stookey of Columbia-Presbyterian Medical Center examined the libellant. He testified, on respondent's case, that he could make no definite findings because, in his opinion, the libellant "grossly exaggerates" his condition to the extent of giving symptoms that have no rational medical, neurological or anatomical explanation. Dr. Stookey is of the opinion that the patient's present pains, if any, are probably due to arthritic conditions in the spine, and especially in the right hip joint, which the several X-rays reveal were present at and prior to the accident. I accept the testimony that there is good fusion in the spine as the result of the operation. This, Dr. Stookey says, would eliminate pressure on the nerve roots between the fourth and fifth vertebrae, if there ever were any, which he doubts. Dr. Stookey, moreover, is of the opinion that the findings of Dr. Lane did not justify his diagnosis and decision to operate.

This court will not presume to resolve this last difference of view between the doctors. I accept Dr. Lane's view that the accident was a competent producing cause of the conditions he found when he examined the libellant. It is enough, therefore, that Dr. Lane, a man of long experience, concluded that those conditions required the operations he performed. Both doctors were in agreement on several points. It is not disputed that the libellant before the accident had, and still has, arthritis in the region of the lumbar spine and in the pelvic area, especially in the right hip joint; that the intervertebral discs could be damaged by arthritis as well as by trauma; that an arthritic disc could be further damaged by a severe blow; that the arthritis found here could cause great pain. They agree, too, that libellant is a "complainer." Dr. Stookey, as already noted, goes further and says that libellant exaggerates his pains and disability. My own observations of libellant during the trial agree with this, and so I accept Dr. Stookey's opinion on this point. I am thus

unable to accept libellant's testimony that he is totally and permanently disabled. He is no doubt incapacitated for service at sea and for work requiring hard strain on the back but, as his own witness, Dr. Lane, testified, he is capable of doing work ashore which would not require long periods of time in one position. Libellant has completed high school and two years of college. He is intelligent and obviously capable of gainful activity despite his injury.

■ His loss of earnings as a third officer from October 10, 1948, when he signed off the ship, to the date of trial is $14,994. He is entitled to an award for this and in addition to $60,000 which I conclude to be his damages for pain and suffering and future loss of earnings. He has already received from the respondent a total of $3,-600 "as advance against claim for personal injury sustained * * * while aboard S.S. Alamar." This amount, therefore, will be deducted from the sum of the foregoing awards. Libellant is also awarded for maintenance and cure, the sum of $1,690 as stipulated by the parties. The total net award, therefore, is $73,084.

Submit findings and conclusions.