**Oliver HENRY, Plaintiff,**

v.

**MOORE–McCORMACK LINES, Inc., Defendant.**

United States District Court
S. D. New York.
June 23, 1955.

72

Cir., 170 F.2d 233, 235; United States v. Borden Co., D.C.N.D.Ill., 111 F.Supp. 562, 566; Defense Supplies Corp. v. Lawrence Warehouse Co., D.C.N.D.Cal., 67 F.Supp. 16, 20–21; see also Bach v. Friden Calculating Mach. Co., 6 Cir., 148 F.2d 407, 411.

In disposing of the case as trier of the facts it is my duty to make findings of fact. I did this at the conclusion of the trial. I find no need to change those findings except to state expressly what I believe would have been apparent from what I have already said. I find:

(1) That the mail locker was lit by two portable cluster lights and a stationary light in an adjoining locker at the time of plaintiff's entry into it.

As I stated at the close of the testimony, in any conflict between the Junior Mate and plaintiff, I believe the mate. The mate states that a few minutes before the plaintiff entered the mail locker he left it lit with two cluster lights and a stationary light in an adjoining locker. There is no basis in the record for me to find that these lights were put out by someone else or that they went out of their own accord. Indeed, any such conclusion is improbable.

(2) With respect to maintenance and cure, I find that plaintiff had reached his maximum cure as to his claimed injuries before his final discharge from the vessel on April 27, 1953.

After plaintiff's injury he remained ashore for three and one-half months during which time he was given therapy at the Marine Hospital and a maintenance allowance by defendant. He then made two more trips on defendant's vessel covering a period of approximately three more months. He claims to have been discharged because of his refusal to do certain work aloft, and at this point, he again asserted his claim for additional maintenance and cure. I believe that he had recovered prior

Wilfrid E. Marrin, New York City, for plaintiff.

Dow & Symmers, New York City, for defendant.

WALSH, District Judge.

In accordance with plaintiff's request I have considered briefs on defendant's motion to dismiss. I find no basis for changing the conclusion indicated at the trial. The complaint is dismissed because upon the facts and the law plaintiff has shown no right to relief.

My conclusion is reached as trier of the facts as well as the law. Accordingly, I have not given the most favorable possible view to plaintiff's testimony. On the contrary, I give it only such weight as I believe it worth in the light of the credibility of his witnesses. Fed.Rules Civ.Proc. rule 41(b), 28 U.S.C.A.; 5 Moore, Federal Practice (2nd Ed.) § 41.13(3), and (4); Allred v. Sasser, 7

to this date, if not fully, at least to the extent of maximum cure.

 No effort was made during the trial to labor the claim of unseaworthiness. There could be only two bases for such a claim: (1) That there should have been a light switch outside the mail locker to avoid the need of entering the locker to plug in the cluster lights; or (2) That the hatch should have had provision for a chain rail. It is my conclusion that neither establishes unseaworthiness. Stationary lights present problems in cargo space. The hatch would have been perfectly safe to enter even in the dark if plaintiff had used the precaution of carrying the torch light with which defendant had furnished him, as he usually did on such occasions. Similarly, I find no need for a chain rail around a small hatch entirely within the walls of a locked enclosure. The unrailed hatch in an enclosure locked against public intrusion was safer than the usual cargo hatch protected by combing or a chain rail. seaworthiness requires a safe ship but not every possible improvement. Doucette v. Vincent, 1 Cir., 194 F.2d 834, 838; The New York, 2 Cir., 204 F. 764, 765.

Defendant was not negligent in leaving the hatch open for the short period involved in shifting piers. As was the regular practice in Buenos Aires, respondent's vessel docked briefly at the government pier to discharge passengers and mail and then moved to a different pier to discharge cargo. The move was made on schedule whether discharge of the mail was completed or not. Under these circumstances, the locker was locked and the side ports closed during the shift but the interior hatches were customarily left open.

On the day in question, discharge of mail was not completed. Shortly before time to shift ship, the Junior Mate, who was supervising the discharge of mail, was required to report to his station on the bridge. The longshoremen who had been discharging the mail over a brow through a cargo port in the side of the vessel withdrew. The mate locked the mail locker and went to the bridge. He left open the side port, a steel door eight feet by five feet and a hatch between the upper deck of the mail locker and the orlop deck eight feet below. The hatch was nine feet six inches by six feet eight inches, and on the *opposite* side of the vessel from the open side port.

Libellant was the carpenter's mate. His duties gave him complete knowledge of the ship's hatches and cargo ports. He had made several trips and was familiar with the routine at Buenos Aires.

██ In deciding whether defendant was negligent the question is whether defendant subjected plaintiff to an unreasonable risk of harm; whether it failed to do an act which was necessary for his protection; whether the risk to which plaintiff was subjected was of such magnitude as to outweigh the expense and loss of time in discharging the mail, incident to the closing and reopening of the hatch. Restatement, Torts, §§ 282, 284, 291.

██ It is my conclusion that the risk of injury was so slight that it did not require the closing and reopening of the hatch. Plaintiff was not an unskilled man, he was the carpenter's mate and on vessels it is the carpenter and his mate who are especially responsible for the hatches of the ship. He had made several trips so that he could be expected to know all about the location of the hatches, the possibility of interrupting the discharge of mail, and the leaving of the hatches open under such circumstances. No one else could be exposed to the danger of the hatch because the mail locker was locked.

There is no general rule that hatches must be kept closed or railed. The question is one for the court and I do not regard as conclusive, "expert" testimony offered by plaintiff. It depends entirely upon the circumstances. An open hatch within a locked compartment would seem to be less hazardous than a railed hatch

in an area frequented by strangers or large numbers of the crew. In Long v. Silver Line, 2 Cir., 48 F.2d 15, unguarded openings to a deep tank in a darkened 'tween-deck were held justified by the need for ventilation preparatory to repairs. In Smith v. United States, D.C. S.D.N.Y., 18 F.2d 110, affirmed 2 Cir., 18 F.2d 111, it was held not negligent to have a 'tween-deck hatch open without lights during a lull in the loading of cargo. To the same effect, see The Saratoga, 2 Cir., 94 F. 221, decided before enactment of the Jones Act, but cited with approval by the Court of Appeals in Smith v. United States, supra, 18 F.2d at page 112.

Cases which have held it negligent to leave hatches open will be found to fall into one of three groups:

(1) Unprotected openings in parts of the deck in general use by the crew, such as an opening in the deck of the fire room, Foster v. Moore-McCormack Lines, 2 Cir., 131 F.2d 907; an opening in the deck of an unlit coal bunker, The Emmy, D.C. S.D.N.Y., 55 F.Supp. 60; an opening in the deck of a dimly lit wheelhouse; Lundy v. Calmar SS Co., D.C.S.D. N.Y., 96 F.Supp. 19, 20;

(2) Unlit, unprotected openings in cargo areas in general use by persons working or inspecting cargo; Badalamenti v. United States, 2 Cir., 160 F.2d 422, 425; The Wearpool, 5 Cir., 112 F.2d 245; Wathne Admr. v. United States, S.D.N.Y., 1949 A.M.C. 1981; The Helios, D.C.S.D. N.Y., 12 F. 732; or

(3) An open hatch coupled with a hazard on deck, such as a seaman being required to work on an unstable deck load of lumber beside an open hatch; Beadle v. Spencer, 298 U.S. 124, 127, 56 S.Ct. 712, 80 L.Ed. 1082; or where a person was required to make repeated trips along a dark, narrow, unguarded platform beside an open deep tank.

These cases are all easily distinguishable from the present case in which the open hatch was in a lighted locker, locked against intrusion by anyone except the carpenter's mate who was fully familiar with its details.

The complaint is dismissed.