**612**

Ervin L. ADAMS
v.
THE Barge UBL 118, Union Barge Line
Corporation and Coyle Lines,
Incorporated.

Ervin L. ADAMS
v.
Henry CHAMPAGNE and Maryland
Casualty Company.

No. 1749, Admiralty;

No. 2822, Civil Action.

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 5, 1957.

Browne & Rault, Gerard A. Rault, and Robert Weinstein, New Orleans, La., for libellant, and for plaintiff.

Lemle & Kelleher and George B. Matthews, New Orleans, La., for Coyle Lines, Inc.

Deutsch, Kerrigan & Stiles and Nigel E. Rafferty, New Orleans, La., for Henry Champagne and Maryland Casualty Co., respondent-impleaded.

Normann & Normann, David R. Normann, Frank S. Normann, New Orleans, La., for Union Barge Line Corp.

CHRISTENBERRY, Chief Judge.

This is a consolidated proceeding which originally was filed as a civil action under the Jones Act, 46 U.S.C.A. 688, and as a libel in admiralty, seeking damages, maintenance and cure. Jury trial was waived. All witnesses were produced in open court and after considering the pleadings, their testimony and interrogatories propounded and answers thereto and hearing oral argu-

ment, the Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

#### I.

Libelant, Ervin L. Adams, is a seaman of the age of majority, resident of Cut Off, Louisiana. At all material times prior to the injury of which he complains, libelant was a deckhand on the Tug Burgundy. The tug was owned and operated by respondent-impleaded, Henry Champagne, who was insured, except as to claims for seaman's maintenance, by respondent-impleaded Maryland Casualty Company, under a policy of employers' liability insurance. Respondent, Union Barge Lines Corporation, owned Barge UBL 118, which it chartered to respondent, Coyle Lines, Incorporated. This charter, however, terminated prior to December 30, 1948. Thereafter, Coyle Lines, at the request of Union Barge Lines Corporation, engaged Henry Champagne to tow the barge to Houston, Texas.

#### II.

Barge UBL 118 was a hopper barge equipped with a coaming varying from three to four feet in height which completely encircled a single hatch. Sliding hatch covers resting on the coaming rose to a low peak approximately one foot higher at the vessel's centerline. Between the coaming and the vessel's sides and ends there was an unobstructed walkway measuring between two and three feet on the port and starboard sides and seven feet at bow and stern. By accident two covers had been dropped overboard on December 22, 1948, leaving a large opening at the forward end of the hatch. The barge was light and hatch covers were not needed.

#### III.

The Tug Burgundy, belonging to respondent-impleaded Champagne, was provided with proper and adequate lights, including a searchlight and all usual and necessary safety and other equipment.

#### IV.

On the afternoon of December 30, 1948, Barge UBL 118 and three other vessels were taken in tow by the Tug Burgundy at the landing of respondent, Coyle Lines, Incorporated, in New Orleans. The Burgundy arrived at Coyle's Landing at 3 P.M. At that time the tug's Master was advised of the missing hatch covers by Coyle Lines' Port Captain. Libelant also noticed that two hatch covers were missing and discussed the matter with the Master and a deckhand. The Master warned them to exercise caution while in the vicinity of the opening. The tug and tow with Barge UBL 118 proceeded through the lock at Harvey, Louisiana, and were then moored to the south bank of the Harvey Canal. While transiting the lock libelant was on board Barge UBL 118 to fend her through the lock and he helped moor the vessel afterward.

#### V.

Libelant worked on the Barge UBL 118 at various times in the afternoon in daylight hours, securing lines thereto and performing his usual duties as a deckhand.

#### VI.

At about 9 P.M. on December 30, 1948, while the vessels were still at their moorings, the tug's Master instructed libelant to place lighted lanterns on the hatch coaming at the center of the bow and stern of Barge UBL 118 and showed him how to affix them. Libelant set up the stern light without difficulty or complaint. He then started toward the bow, which was illuminated by the tug's spotlight, her four deck lights and the lantern which libelant was carrying. Thereafter libelant unnecessarily climbed onto either the hatch covers or the coaming in order to approach the center of the vessel at the bow. He lost his balance and fell into the hold. Libelant's fall could not and would not have occurred if he had made use of the walkway to approach the desired location taking advantage of the protective coaming provided.

## VII.

Libelant was unable to account for his action and attempted various confusing and inconsistent explanations which, together with all other evidence, support findings, herein entered, that he was careless and negligent in climbing or walking on the covers or coaming, and that the condition or seaworthiness of the barge or tug had no bearing on his accident. Both vessels were, however, entirely seaworthy for purposes of this voyage.

## VIII.

Libelant sustained a comminuted fracture of the left tibia and fibula at the lower extremity of his left leg just above the ankle, resulting in permanent-partial disability of 20 per cent. of the motion of the left ankle. The injury has now attained maximum functional improvement and no further treatment is necessary. Libelant is able to perform the duties of a seaman both offshore and in inland waters.

## IX.

Libelant was admitted to the Marine Hospital at New Orleans immediately after the accident and received treatment there for three and one-half months from December 31, 1948, to March 17, 1949. Thereafter, he was an out-patient unfit-for-duty for 77 days. Libelant then began working as a yard or handy man earning some $4 to $6 per day. He did not resume the work of a seaman until the following year. Respondent-impleaded, Henry Champagne, paid him maintenance of $150 during the period of his incapacity.

## X.

Considering all the evidence, libelant is entitled to be paid maintenance by respondent-impleaded, Henry Champagne, in the amount of $6 per day from March 17, 1949, through January 10, 1950, or $1,794, less $150 for maintenance already advanced.

## Conclusions of Law

### I.

The Court has jurisdiction of this action and venue is properly laid in the Eastern District of Louisiana.

### II.

■ Libelant is solely at fault for his injury resulting from his fall into the hold of Barge UBL 118.

### III.

■ Absence of the hatch covers which had fallen overboard from the UBL 118 did not, under the circumstances, make the flotilla unseaworthy. Ove Tsyko v. Royal Mail Steam Packet Co., 9 Cir., 1936, 81 F.2d 960, 1936, A.M.C. 365; The Kongosan Maru, 9 Cir., 1923, 292 F. 801, 1923 A.M.C. 1238; Henry v. Moore-McCormack Lines, D.C. S.D.N.Y.1956, 134 F.Supp. 71, 1956 A. M.C. 503; Brown v. Luckenbach Steamship Co., D.C.S.D.N.Y.1929, 1929 A.M.C. 37, affirmed 2 Cir., 1930, 37 F.2d 1010.

### IV.

■ Libelant knew of the danger of walking on the hatches or coaming and was required to make use of the available safe passage. Nelson v. United Fruit Co., 2 Cir., 1952, 201 F.2d 47, 1953 A.M.C. 146; Bohannon v. United States, D.C.S.D.N.Y.1950, 92 F.Supp. 700, 1950 A.M.C. 1009, affirmed 2 Cir., 1951, 185 F.2d 678, 1951 A.M.C. 319; Carlson v. U. S. (The Aquarius), 5 Cir., 1934, 71 F.2d 116, 1934 A.M.C. 841; Brown v. Luckenbach Steamship Co., supra; The Saratoga, 2 Cir., 1899, 94 F. 221.

### V.

Libelant is entitled to judgment for maintenance in the amount of $1,644 against respondent-impleaded, Henry Champagne, who is entitled to dismissal of the consolidated action against him insofar as the demand for all other relief is concerned. All other respondents are entitled to judgment dismissing the petition and libel herein as to them.

A decree and judgment have been entered accordingly.