John A. **WOUNICK**, Libellant,

v.

**PITTSBURGH CONSOLIDATION COAL COMPANY**, Respondent.

Civ. A. No. 14220.

United States District Court
W. D. Pennsylvania.
June 27, 1962.

Harry Alan Sherman, Pittsburgh, Pa., for libellant.

Rose, Houston, Cooper & Schmidt, Harold Schmidt, Pittsburgh, Pa., for respondent.

ROSENBERG, District Judge.

This case came for retrial to the court in Admiralty upon its remand by the United States Court of Appeals for the

Third Circuit. Wounick v. Pittsburgh Consolidation Coal Company, 283 F.2d 325 (1960).

The case was originally tried on the 20th day of April, 1959, in an action brought by the plaintiff in the District Court under the Jones Act, 46 U.S.C.A. § 688, on three counts: one, for negligence; two, for unseaworthiness; and three, for maintenance and cure. Because the complaint was filed thirteen days after the statute of limitations had run under the Jones Act, at the conclusion of its case, the defendant moved for a directed verdict on grounds, inter alia, that the complaint was filed too late. The motion was granted and the appeal to the Circuit Court followed.

The Circuit Court ruled that since the statute of limitations under the Jones Act had run when the complaint was filed, the plaintiff had no subsisting rights under that act, but did have a claim in an action in admiralty. The court directed that the District Court give full consideration to all relevant facts pertaining to the issue of laches, and that the libellant be granted an opportunity to amend the libel and plead any facts negativing and excusing his delay. The pleadings were amended and the testimony relevant to laches was heard. It was stipulated by counsel that the testimony at the first trial be made a part of the record for the trial judge for the purpose of a determination of all issues in this case.

This case arose from an accident on January 13, 1953, when the libellant sustained personal injuries while in the employment of the respondent company, and while working on the steamer Mongah, and its tow. Based upon information received from the libellant, himself, Captain John Smith of the steamer, prepared an accident report which was received in the appropriate office of the respondent on January 15, 1953.

The report, in evidence, indicated that the accident happened at 6:30 o'clock A. M. on January 13, 1953, while the steamer, Mongah, was hooking up its tow at Lock No. 2 on the Monongahela River. The libellant was employed as a deck hand when he stepped on a pump box lid on the line deck of barge No. 341. The report indicated that the libellant had a bruised right knee and thigh, and further indicated no attending physician or hospital care was required, and that the employee returned to his work.

Upon receipt of the report from Captain Smith, Captain James K. Hynde, who was in charge of the River Division for the respondent, and whose task it was to process all such reports, contacted Captain Smith and inquired specifically regarding the accident in the report. His investigation revealed that no medical attention was required, and that libellant had not asked to leave the vessel upon which he was working. Further inspection of the equipment showed no defect in the barge's hatches in any way. On the basis of this investigation, this report was filed in the personal file of John A. Wounick, and the matter was pursued no further.

On April 1, 1954, the libellant retained Attorney S. Eldridge Sampliner of Cleveland, Ohio, to represent him in his claim for injuries against the respondent in this case. On April 13, 1954, Mr. Sampliner informed the respondent of his representation of the libellant, in his claim for damages as the result of personal injuries sustained by libellant early in 1953.

Upon receipt of this letter, the respondent, through Mr. John Corcoran, Assistant Vice President, contacted its River Division and was informed of the report of January 13, 1953. A series of correspondence was transmitted between Mr. Sampliner and Mr. Corcoran between April and October of 1954. Counsel for the libellant, in addition to procuring medical reports, had urged his client to ascertain more facts about the circumstances of the accident, including the date of its incurrence.

The amended libel and evidence produced at the second trial pleads justification for the filing of the original complaint by reason of the fact that libellant's counsel, S. Eldridge Sampliner, had been lulled into a sense of security by re-

spondent's assurance that there would be an amicable settlement if suit were withheld, and the further assurance that if suit were entered, the respondent would delay and contest the libellant's claim.

In spite of the fact that the court is not impressed by this testimony that a lawyer of Mr. Sampliner's ability and experience would be lulled into a false sense of assurance and inactivity, or be intimidated because of any ephemeral inducement or statements such as were offered as testimony in this case, there appears to be nothing in this case which would deprive the libellant of his remedy in Admiralty.

By virtue of the opinion of the Circuit Court, the function of this court is clear and pointed. The Court ruled as follows: At Page 328 of 283 F.2d:

"The case must, therefore, be returned to the district court for a full consideration of all the relevant facts pertaining to laches, e. g., that the defendant had knowledge of the accident from the day of its occurrence; that it had a list of possible witnesses from the same date; and that the complaint (libel) was filed only thirteen days following the running of the analogous three-year statute of limitations. On remand the plaintiff should also be granted an opportunity to amend his libel and plead any additional facts negativing prejudice and excusing his delay."

This court, after a review of all the evidence and the relevant exhibits, and after drawing reasonable inferences therefrom, and after a careful review of the proposed findings of fact and conclusions of law submitted by the respective parties, concludes that this action should not be dismissed because of laches. This court now finds and concludes that respondent did have knowledge of this accident from the day of its occurrence. The agent of the respondent, Captain Smith who stood in a paternal position to the injured seaman, (Potter Title & Trust Company v. Ohio Barge Line, 3 Cir., 184 F.2d 432; Monteiro v. Paco Tankers, D.C., 93 F.Supp. 93), immediately related his report to Captain Hynde that the libellant was injured on January 13, 1953, after falling into a hatch.

The respondent contends that it was confused because the accident which the libellant pleaded in his complaint was different from the accident which occurred on January 13, 1953, and that the respondent was, therefore, in no position to properly investigate the same. This position is contradicted by the evidence because Captain Hynde had contacted Captain Smith upon receiving the report of libellant's accident, and after further investigation filed the same and pursued it no further. Secondly, this was the only accident which involved a hatch cover.

The respondent did have a list of possible witnesses of the accident from the day of its occurrence and afterwards. At this time all of the witnesses to the accident and the incident surrounding the accident were available to the respondent.

The complaint (libel) was filed only thirteen days following the running of the analogous three-year statute of limitations under the Jones Act. While no actual suit was commenced within three years of any act analogous to the Jones Act limitation of actions, none was needed. It was only necessary that the libellant act towards the respondent in such a manner as to prevent any prejudice to the respondent.

The libellant's proctor notified the respondent on April 13, 1954 of his client's claim in this case. The respondent was then on notice. It had the means and witnesses to protect itself against the claim, if any defense were available. Respondent relaxed upon the hope or expectation of the three years expiring without any further action upon the part of the libellant. There is no evidence it was in a more hazardous position thirteen days after the expiration of the three years, than it was one day before the expiration of the three-year period.

It was, in fact, in no hazardous position at either time. It had all its witnesses and all its records.

■■ Laches may not be determined in this case simply as a mechanical matter. Pinion v. Mississippi Shipping Co., D.C., 156 F.Supp. 652. Neither can laches be based upon or determined from the mere reference to the calendar. Walle v. Dallett, D.C., 135 F.Supp. 390. The passing of three years and thirteen days based upon the Jones Act limitation of actions, does not condemn this action. And while delay may defeat a claim, prejudice must inevitably follow such a delay. But in this case, there is no reflection of any prejudice from the date when the accident occurred to the time when the action was filed or afterwards, insofar as the rights of the defendant are concerned. The entire record in this case rebuts any possible presumption of prejudice against this respondent. This Court, accordingly, finds that this action should not be dismissed because of any laches.

At approximately 6:30 o'clock A.M. on January 13, 1953, the libellant along with Frank Sibula, a fellow seaman, working on the steamer, Mongah, was ordered to pump water from the starboard head barge which was leaking and the mate ordered the libellant to place a pump. After the pump was placed in the forward line deck of the barge, the libellant was ordered to start removing some of the coal out of the leaking barge and deposit the coal on the steel line deck of the barge, for the purpose of creating a dam to keep the water from flowing from the leaking barge into the adjoining barge.

The line deck was covered with coal which had been scattered from a hopper. The line deck hatch or hatch cover protruded above the deck one-quarter of an inch, and the hatch cover, itself, was perhaps one-half inch thick, supported by lugs below the surface of the deck. It was locked by placing a wrench in a square hole in the middle of the lid. There appeared to be four lugs on the hatch cover, itself, and four lugs on the deck for the purpose of holding the hatch cover and keeping it from shifting. The hatch, itself, was approximately eighteen inches wide and the cover was a little larger because it had a one-half inch ledge all the way around to keep it from going all the way down into the barge.

■ Libellant could not see the hatch cover because coal had been scattered on the line deck, and when he unknowingly stepped on the hatch cover, which had been so covered by coal, it flipped up and both his feet fell into the hole as his legs straddled the hatch cover, resulting in injuries to the libellant's groin and back. While there is no evidence that the hatch cover or its appurtenances were defective, it is obvious that a failure to keep the hatch cover properly fastened and plainly visible, and permitting the coal to gather over it, and obscure the cover amounted to unseaworthiness in method and procedure. Samad v. The Etivebank, D.C., 134 F.Supp. 530; Lundy v. Calmer S. S. Corp., D.C., 96 F.Supp. 19; The Emmy, D.C., 55 F.Supp. 60.

Three elements then existed which caused the accident and injuries to the libellant—an unfastened hatch cover, obscured by coal, during darkness where a seaman was sent to perform his task of pumping an accumulation of water from a barge with a hand flashlight. These presented an unseaworthy condition.

■ The libellant complained of pains in the area of the groin and back for which he received medical treatment and for which he expended his own money. While undoubtedly the libellant did suffer pains because of the injury, and the accident which occasioned the injury, it is significant that he lost no time from work, and in fact took on extra work. The court finds that he should be compensated reasonably for such pains as he suffered, and is of the opinion that he is entitled to compensation in the sum of $3500.00. There is no evidence in this record to support libellant's claim for maintenance and cure, and accordingly, the same is hereby dismissed.

Findings of Fact and Conclusions of Law are contained in this opinion.

### ORDER OF COURT

AND NOW, this 27th day of June, 1962, judgment is hereby entered in the amount of $3500.00 in favor of John A. Wounick, Libellant, and against Pittsburgh Consolidation Coal Company, Respondent.