**CONSTRUCTION, LTD., a corporation of the State of New Jersey, Appellant,**

**v.**

**BROOKS–SKINNER BUILDING COMPANY, Defendant-Counterclaimant, and**

**Van Noorden Company, Inc., a corporation of the Commonwealth of Massachusetts, et al., Defendants, and**

**Firemen's Insurance Company, Newark, New Jersey, a New Jersey corporation, Third-Party Defendant.**

**No. 73–1089.**

United States Court of Appeals, Third Circuit.

Argued Oct. 12, 1973.

Decided Dec. 4, 1973.

Philip J. Albert, Levy, Levy, Albert & Marcus, Trenton, N. J., for appellants; Seymour I. Marcus, on the brief.

Charles E. Villanueva, Van Riper, Belmont & Villanueva, Newark, N. J., for defendant-counterclaimant-appellee, Brooks-Skinner Building Co.

Before HASTIE, VAN DUSEN and ADAMS, Circuit Judges.

### OPINION OF THE COURT

*ADAMS, Circuit Judge.*

This appeal arises from a dispute between a prime construction contractor and one of its subcontractors, that generated a lawsuit by the prime contractor in which a counterclaim was interposed by the subcontractor. A jury returned a verdict for the latter. The questions with which we must deal concern the admissibility at trial of certain evidence and the propriety of a particular jury instruction.

In June of 1969, Construction, Ltd. was awarded a Government contract for the building of the so-called "South East Asia (SEA) Project" at Fort Dix, New Jersey. Under the terms of the contract, Construction was responsible for the installation of a series of control towers, latrines, classroom buildings,

"test" buildings, a shower building, and various other facilities, on a range at Fort Dix. Construction was to receive $1,498,000 for the job.

On July 17, 1969, Construction entered into a subcontract with the Brooks-Skinner Building Company, whereby Brooks-Skinner agreed to supply and erect all of the prefabricated metal buildings for the SEA Project.[1] Under the subcontract Brooks-Skinner was to deliver the buildings to the job site by October 28, 1969, and to finish its work by November 28, 1969. The subcontract specified a consideration payable to Brooks-Skinner of $175,000.[2] The parties inserted a notation in their agreement to the effect that actual—not liquidated—damages would be recoverable in the event of a delay by Brooks-Skinner.[3]

There was testimony at the trial that Brooks-Skinner was late in completing the work required of it, an admitted breach of the subcontract, and that only a few of the buildings were finished by Brooks-Skinner as of December 31, 1969. Further testimony indicated that Brooks-Skinner did not complete all of its work until May 8, 1970.

Another critical item developed at trial was that the Government, during the course of construction of the SEA Project, had deleted its order for four of the latrines from the prime contract, its prerogative under the terms of that contract. The Government offered to take a "credit" of $10,963 for the four deleted latrines, and finally withheld payment from Construction for these latrines in the amount of $13,113.[4]

Construction brought suit against Brooks-Skinner seeking to recover damages allegedly brought about by the subcontractor's delay,[5] and asserted that Brooks-Skinner's tardiness had caused it a loss of $206,386.[6] However, inasmuch as Construction still owed Brooks-Skinner $114,446 under the subcontract, Construction sought a judgment in the amount of only $91,940.[7] Brooks-Skinner counterclaimed for the balance owing it under the subcontract, $114,446, and denied any liability to Construction based on the delay. There was a general verdict in favor of Brooks-Skinner in the amount of $68,925,[8] and Construction appealed.

I.

At the trial, Brooks-Skinner introduced certain documents evidencing the profit made by Construction from the

---

1. Specifically, Brooks-Skinner was to supply and erect 43 chemical latrines, one water-borne latrine, 24 tower buildings, two test buildings and one shower building.

2. The contract between Construction and the Government stated that Construction would complete the entire SEA Project by May 11, 1970. Construction, however, intended to complete the work by December 31, 1969. It made this fact known to Brooks-Skinner, and included in the subcontract a stipulation to the effect that Brooks-Skinner understood December 31, 1969 to be Construction's completion date for the entire project.

3. As set forth in the fourteenth paragraph of the subcontract, "time is and shall be considered the essence of the contract on the part of the said sub-contractor . . . ."

4. As pointed out in part II of this opinion, Construction maintains that the Government's deletion order, and the attendant monetary loss to Construction, were a direct

result of Brooks-Skinner's untimeliness in providing the latrines.

5. Construction's complaint also named as defendants the Van Noorden Company, Inc., and EG&G, Inc., and alleged that Brooks-Skinner was an "operating division" of these two corporations.

 Jurisdiction was grounded on diversity of citizenship. Construction is a New Jersey corporation and all the defendants are Massachusetts corporations, with respect both to incorporation and principal place of business.

6. Included in Construction's computation of this figure, $206,386, is the $13,113 withheld by the Government for the deleted latrines.

7. The amount of damages sought ($91,940) was arrived at by subtracting the amount concededly owed Brooks-Skinner ($114,446) from the total of the alleged damages ($206,386).

8. The judgment ran as well against the Fireman's Insurance Company, Construction's bonding company.

SEA Project. In addition, Brooks-Skinner elicited from several witnesses testimony concerning the same topic, as well as Construction's general profitability and solvency. On this appeal Construction maintains, *inter alia,* that the evidence regarding its profits was irrelevant, that it tended to prejudice the jury, and that its admission therefore constituted reversible error.[9]

The theory offered by Brooks-Skinner at trial to establish the relevancy of the challenged evidence is contained in the following statement by Brooks-Skinner's trial counsel:

> "But your honor, if this project happened to be the most profitable project for a corporation that has been running in the red, I think it certainly shows that they didn't sustain the loss that they are attempting to show . . . ." [10]

And again, in his summation to the jury, counsel repeated that "the amount of profit goes to whether or not these damages were actually sustained." [11] In other words, Brooks-Skinner contended at trial—and repeats the argument here —that evidence of an overall profit on the SEA Project tended to disprove Construction's allegation that it actually suffered a loss because of the subcontractor's delay, or at least indicated that any loss incurred was not as great as alleged.

Under ordinary circumstances, there would be serious doubt whether the evidence of profits bore the indispensible hallmark of legal relevancy—that it had some tendency to make the existence of a material fact more probable or less probable than it would be without the evidence.[12] To illustrate, suppose Construction had planned to earn $100,000 on the SEA Project, over costs of $500,000, or a 20 per cent profit. Then assume further that losses, proved to be directly attributable to Brooks-Skinner, reduced the expected profit to a realized amount of only $50,000, or 10 per cent. The fact that 10 per cent was in fact earned, or that 10 per cent was a "fair" profit in the industry, or that it was the greatest percentage profit ever made by Construction, appear largely irrelevant to the question in issue—whether, by reason of Brooks-Skinner's delay, Construction earned less than the gross amount it had contracted to earn.

At the trial, however, Construction failed to introduce any evidence of its itemized costs for the project, notwithstanding that Brooks-Skinner had caused a subpoena to issue in an attempt to obtain such evidence from Construction. Without evidence of itemized costs, Brooks-Skinner could not develop the extent to which Construction's projected profit for those aspects of the work subcontracted to Brooks-Skinner exceeded the profit actually made. Under these circumstances, with the jury in the dark regarding Construction's projected and actual profits for the portion of the job done by Brooks-Skinner, and thus unable to gauge the magnitude of the alleged loss with any precision, evidence of overall profit became at least arguably relevant. Evidence that tended to show that Construction had indeed garnered a very high profit on the whole project had, in these circumstances, some tendency to prove that Construction did not suffer a loss of profits, or that its loss could not have been very great. Based on such evidence, the jury might rationally have concluded that

---

9. A related contention of Construction is that Brooks-Skinner's counsel should not have been allowed to comment upon the evidence of profits in his summation to the jury. However, Construction's counsel made no objection at trial to this aspect of the summation.

10. 5 Tr., p. 64.

11. 10 Tr., p. 13.

12. *See generally* McCormick, Evidence § 185 (2d ed., 1972). Rule 407, Rules of Evidence for the United States Courts and Magistrates (July 1, 1973), contains a similar formulation for determining relevancy. The Rules, though approved by the Supreme Court, are still under consideration in Congress, and thus are not yet binding upon the federal courts.

Construction's itemized cost and profit projections did not contemplate a greater profit than the high profit actually earned.

 This is not to suggest that the challenged evidence of profits was in any sense conclusive as to the existence *vel non* of the alleged loss. But neither can it be said that, in the context of this case, the evidence was utterly without probative value.[13] Thus we conclude that, standing alone, Construction's assertion that the evidence was irrelevant does not warrant reversal of the district court's judgment.

In sustaining the trial judge's ruling on relevancy, we are mindful of the precept that:

> "[A] trial court has a great latitude in ruling on the admissibility of evidence. His determination of legal relevancy is also an act of discretion not to be disturbed absent a clear showing of abuse." [14]

Inasmuch as the evidence possessed at least a modicum of rationally probative force, we decline to hold that the trial court abused its discretion by admitting it.

Related to Construction's attack on the determination of relevancy is its contention that the evidence of profits had so great a potential to prejudice the jury that it should have been excluded. Rule 403, Rules of Evidence for the United States Courts and Magistrates, provides in part that:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

Construction maintains that, even if the evidence of profits *were* marginally relevant, the danger that it might have misled or prejudiced the jury "substantially outweighed" its probative worth.[15]

 The task of assessing potential prejudice is one for which the trial judge, considering his familiarity with the full array of evidence in a case, is particularly suited. As noted in the Advisory Committee's commentary on Rule 403, "[s]ituations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." The practical problems inherent in this balancing of intangibles—of probative worth against the danger of prejudice or confusion—call for the vesting of a generous measure of discretion in the trial judge.[16] Were we sitting as the trial judge in this case, we might well have concluded that the potentially prejudicial nature of the evidence of profits outweighed its probative worth. However, we cannot say that the trial judge abused his discretion in reaching the contrary conclusion.

## II.

Construction maintains that the charge to the jury was erroneous in several respects.

As mentioned above, the Government deleted its order for four of the latrines from its contract with Construction, and withheld payment of $13,113 for the deleted items. Construction claimed that Brooks-Skinner's delay was the cause of the Government's decision to delete these items and, accordingly, was the reason for the loss of the $13,113.

13. *Cf.* 1 Wigmore, Evidence § 29 (3d ed., 1940); McCormick, Evidence § 185, p. 438 (2d ed., 1972); Stauffer v. McCrory Stores Corp., 155 F.Supp. 710 (W.D.Pa.1957).

14. Control Data Corp. v. Int'l Business Machine Corp., 421 F.2d 323, 326 (8th Cir. 1970). *See also* Beaty Shopping Center, Inc. v. Monarch Ins. Co. of Ohio, 315 F.2d 467, 471 (4th Cir. 1963); McCormick, Evidence § 185, p. 440 n. 35 (2d ed., 1972).

15. We reiterate that Rule 403, as such, is not yet binding upon the federal courts. *See* Note 12, *supra.* Nonetheless, it serves as a useful synopsis of extant law. *See* McCormick, Evidence § 185 (2d ed., 1972).

16. *See* McCormick, Evidence § 185, p. 440 (2d ed., 1972).

Construction excised *its* order for the four latrines from the subcontract with Brooks-Skinner, but the latter agreed only to accept a "credit" of $3,760 for the deletion. Rather than accede to this amount, Construction included the full $13,113 in its computation of damages attributable to Brooks-Skinner's delay.

Regarding Construction's loss from the deletion of the latrines, the trial court charged the jury as follows:

"Now, the contract between the United States Government and the plaintiff Construction, Ltd. contains a provision that permitted the Government to delete items when not required for which appropriate deductions would be made by the Government. No such provision was included in the agreement between plaintiff Construction, Ltd. and the defendant-counterclaimant Brooks-Skinner. Therefore, the plaintiff Construction, Ltd. had no right to eliminate four latrines from the contract with Brooks-Skinner Building Company. When plaintiff Construction, Ltd. cancelled the erection and installation of four chemical latrines, the defendant-counterclaimant Brooks-Skinner Building Company was entitled from Construction, Ltd. to the contract price less the reasonable cost and completion of these latrines which defendant-counterclaimant Brooks-Skinner Building Company did not then have to complete.

"If you find that the Corps of Engineers, the United States Army, should credit to the plaintiff Construction, Ltd. for deletion of said four latrines, which credit included deletion of additional work, which is not responsible for defendant-counterclaimant Brooks-Skinner, the amount of said credit, therefore, cannot be considered in determining the amount of work reasonably required which the defendant-counterclaimant Brooks-Skinner Building Company was requested to perform." [17]

On its face, the quoted portion of the charge can fairly be taken to imply that, although the Government reserved the right in the prime contract to delete the latrines, Construction reserved no such right against Brooks-Skinner in the subcontract. Consequently, the jury may have been led to believe that it could not, under any circumstances, consider the $13,113 credit —"a loss" to Construction allegedly caused by Brooks-Skinner—in its assessment of damages, even if it found for Construction on all of the other issues in dispute. Given its susceptibility to such an interpretation, this aspect of the charge was erroneous.[18]

The sixteenth article of the subcontract provides as follows:

"The subcontractor [Brooks-Skinner] recognizes the right of the Government under the Prime Contract to terminate all or any portion of the work for its convenience. Should any action so taken apply to the work called for hereunder, this subcontract shall be terminated to the same extent, and the respective rights and obligations of the parties hereto shall be as set forth under section 8–706 of the Armed Services Procurement Act."

It is clear from this provision that Construction, while bound to assent to any deletions by the Government, had the right to make correlative deletions vis-à-vis Brooks-Skinner. Indeed, section 8.706(a)(iii) of the Armed Services Procurement Regulations[19] expressly provides that a Government contractor may make deletions from a subcontract upon receipt of a Government termination order. Moreover, section 8.706(f)(ii) of the Regulations[20] permits such

---

17. 10 Tr., pp. 70–71.

18. Construction duly objected to this portion of the charge at trial, in conformity with Rule 51, Federal Rules of Civil Procedure.

19. 32 C.F.R. § 8.706(a)(iii) (1972). The Regulations were erroneously referred to in the subcontract as the "Armed Services Procurement Act."

20. 32 C.F.R. § 8.706(f)(ii) (1972).

a contractor to deduct from amounts owed to the subcontractor, "any claim which the [contractor] may have against the [subcontractor] in connection with [the] contract." These two sections of the Regulations were incorporated by reference into the subcontract.[21] Thus, since the jury might have found from the evidence that the deletion by the Government of the four latrines was a result of the delay caused by Brooks-Skinner, the district court should have charged that Construction *was* entitled to include in its computation of damages an amount equal to the Government's withheld payment—to wit, $13,113.[22]

Brooks-Skinner argues earnestly that Construction has not proved that "the credit for the deletion of [the] four latrines claimed by Construction . . . was not part of the $45,521.04 damages assessed by the jury against Brooks-Skinner," and that therefore the verdict ought not be disturbed.[23] This argument would appear to miss the mark. Given the erroneous instruction, there exists a likelihood that the jury thought itself foreclosed from including the $13,113 in computation of any verdict against Brooks-Skinner. That very likelihood is a sufficient predicate for a finding of error.[24]

Ordinarily, it would be necessary to reverse the judgment of the district court and remand this case for a new trial, in light of the deficiency in the instructions pertaining to the $13,113 item. However, at oral argument, counsel indicated that Brooks-Skinner would agree to a reduction of the verdict in the amount of $13,113. Since this procedure achieves, from Construction's perspective, the most that could be accomplished by a new trial based on this defect, the judgment of the district court will be affirmed subject to this reduction of the verdict.[25]

This case will be remanded to the district court, with a direction to change the figure in the third line from the end of its judgment from "$68,925.00" to "$55,812.00." See 28 U.S.C. § 2106.

---

21. Termination provisions in Government contracts, and correlative provisions in related subcontracts, are commonplace. *See, e. g.*, Premier Roof Co. v. United States, 315 F.2d 18 (9th Cir. 1963); G. L. Christian and Associates v. United States, 312 F.2d 418, 160 Ct.Cl. 1 (1963).

22. It must be remembered that Construction did no more than to include the $13,113 in its computation of its entire loss, which amount was reduced by the amount owed Brooks-Skinner to arrive at the damages sought.

23. The so-called verdict "against Brooks-Skinner ($45,571) is arrived at by subtracting the verdict in favor of Brooks-Skinner ($68,925) from the total damages sought by Construction ($114,446).

24. *Cf.* Foster ·v. Moore-McCormack Lines, Inc., 131 F.2d 907, 908 (2d Cir. 1952), cert. denied, 318 U.S. 762, 63 S.Ct. 560, 87 L.Ed. 1134 (1943) ("Whether the jury . . . weighed the testimony in light of the judge's instructions, of course, we do not know, and, indeed, are forbidden to inquire.").

25. We have considered the several other contentions raised by Construction on this appeal and find them to be without merit.

Reducing the verdict by the full $13,113 may well achieve more from Construction's point of view than could be accomplished by a new trial. Unless Brooks-Skinner had provided the four deleted latrines to Construction for free—an unlikely possibility—Construction's lost profit on these items would consist only of $13,113, *minus* whatever amount Construction owed Brooks-Skinner under the subcontract for the four latrines.