JOHN McSHAIN, INC., Appellant,

v.

CESSNA AIRCRAFT COMPANY

v.

WINGS, INC. and Butler Aviation-Friendship, Inc., third party defendants,

v.

SUMMIT AVIATION, INC.

No. 77–1008.

United States Court of Appeals, Third Circuit.

Argued Sept. 8, 1977.

Decided Oct. 7, 1977.

about Wright's conversation has not been considered by the Pennsylvania courts.

Henry B. FitzPatrick, Jr., Liebert, Short, FitzPatrick & Lavin, Philadelphia, Pa., for appellant.

William A. Zurzolo, J. Grant McCabe, III, Rawle & Henderson, Philadelphia, Pa., for appellee Cessna Aircraft Co.

Joseph T. Bodell, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellee Summit Aviation, Inc.

Before VAN DUSEN, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

The appeal in this diversiiy case turns primarily on challenges to the evidentiary rulings of trial court.

In May 1969, John McShain, Inc. purchased an aircraft manufactured by Cessna Aircraft Co. from Wings, Inc. for $282,136. In December 1969, several hundred landings and 147 hours of flight later, the main landing gear of the plane collapsed as the plane alighted on the runway in Baltimore. After notifying Cessna, McShain had the aircraft repaired by Butler Aviation-Friendship, Inc. at a cost of $11,734. During the course of the overhaul, Cessna representatives visited the Butler repair facilities. The plane was then returned to McShain.

After 5 hours of further flight, the plane's landing gear once more gave way upon touchdown. The cost of repairs this time totaled $24,681. McShain refused to fly the craft again.

Negotiations between McShain and Cessna regarding a new plane terminated when McShain filed an action in Pennsylvania Common Pleas Court seeking rescission of the original sales contract and the return of the purchase price.

McShain then instituted the present action against Cessna in district court, alleging defective design in the landing gear and Cessna's failure to correct that design despite knowledge of the defects. McShain requested judgment for (a) the cost of the repairs, (b) consequential damages, and (c) $5,000,000 in punitive damages. Cessna joined Butler as a third party defendant on the theory that the second crash was the result of inept repairs.

Before the conclusion of the eighteen-day trial, Cessna accepted liability for the first collapse on the ground that the existence of an understrength bolt had been discovered in the landing gear, and that that bolt was the cause of the original breakdown.

The jury returned a verdict of $11,734 for the plaintiff as to the first accident, and a special verdict finding that there was no design defect in the landing gear. McShain moved for a new trial on the ground of six allegedly improper evidentiary rulings. The trial court denied the motion, and McShain has appealed from that denial.

McShain's two most substantial objections to the rulings below challenge Judge McGlynn's admission of McShain's pre-trial release of Butler from liability, and the trial court's refusal to admit copies of National Transportation Safety Board accident files. We conclude, however, that neither of these rulings, nor indeed any of the other rulings referred to on this appeal, warrants a new trial.

## A. THE BUTLER–McSHAIN AGREEMENT

Before the action was filed in the district court, the plaintiff signed an agreement releasing Butler from any liability for the accident in exchange for $10 and the right to engage as a consultant Ralph Harmon, who was at the time an employee of Butler's sister corporation, Mooney Aircraft Corp. Mr. Harmon was thereupon retained by McShain, and ultimately testified as an expert witness in support of the design-defect contention. Judge McGlynn allowed

the release to be entered into evidence and read to the jury for the purpose of impeaching Mr. Harmon's testimony.

McShain urges that, under Federal Rule of Evidence 408, agreements in compromise of a claim are generally inadmissible on the issue of liability on such claim. Cessna's reference to the Butler-McShain agreement, McShain insists, is such a proscribed use of evidence, since Cessna's counsel implicitly attempted to shift blame for the second failure from Cessna to Butler.

In response, Cessna maintains that the evidence was in fact admitted for the purpose of establishing the bias of Mr. Harmon, thus falling squarely within the exception to Rule 408. The rule by its terms "does not require the exclusion [of] evidence" when offered for the purpose of "proving bias or prejudice of a witness."[1]

■ We believe that Judge McGlynn did not commit reversible error in admitting the agreement and in allowing comments upon it. The fact that a sister corporation of Harmon's employer had been released from liability in exchange for Harmon's testimony cast doubt upon Harmon's impartiality. Thus, as counsel for McShain appeared to contend at oral argument, McShain's claim is in reality that the potential prejudice from the admission of the agreement outweighed the agreement's probative value. See Fed.Rule Evid. 403.

■ In evaluating such an argument, we acknowledge that the trial judge's familiarity with the tone and scope of the evidence presented to the jury puts him in an advantageous position to gauge the relative importance of potential prejudice and probative value.[2] Nonetheless, the balance required is not a *pro forma* one. A sensitive analysis of the need for the evidence as proof on a contested factual issue, of the prejudice which may eventuate from admission, and of the public policies involved is in order before passing on such an objection.[3] The substantiality of the consideration given to competing interests can be best guaranteed by an explicit articulation of the trial court's reasoning.[4]

Here, the trial judge clearly took notice of the arguments presented by both sides regarding the admissibility of the release. And while his ruling does not fully set forth his underlying rationale, we conclude that admission of the release was not an abuse of discretion so "inconsistent with substantial justice" as to require a new trial.[5]

## B. NATIONAL TRANSPORTATION SAFETY BOARD REPORTS

■ McShain's second major objection concerns Judge McGlynn's refusal to receive into evidence thirty accident reports submitted to the National Transportation Safety Board, regarding accidents in which the landing gear of Cessna aircraft gave way. These accident reports include statements filed by pilots, the reports of government investigators, and in some instances

---

1. See Reichenbach v. Smith, 528 F.2d 1072–76 (5th Cir. 1972).

2. See Construction Ltd. v. Brooks-Skinner Building Co., 488 F.2d 427, 431 (3d Cir. 1973).

3. See Hunziker v. Sheidemantle, 543 F.2d 489, 495 n. 10 (3d Cir. 1976); Posttape Associates v. Eastman Kodak Co., 537 F.2d 751, 757–58 (3d Cir. 1976); cf. United States v. Cook, 538 F.2d 1000, 1003–04 (3d Cir. 1976) (inquiry regarding evidence of other crimes).

4. See United States v. Robinson, 530 F.2d 1076, 1081 (D.C.Cir.1976).

5. See F.R.C.P. 61. The evidence here involved bears on Harmon's credibility. While other evidence introduced also impeached Harmon by showing that he was retained by McShain,

the situation here is not within the core of the public policy that the rule against admission of compromises was designed to vindicate. That policy encourages negotiation by preventing the parties to the compromise from being tied elsewhere to the concession they made *inter sese*. See F.R.Ev. 408 Adv.Comm. Notes. The agreement in question was introduced not to prove the compromise of the claim and hence impugn the claim's validity, but to prove against McShain the existence of the right to recovery for which it had accepted less than full value. This inhibits not the settlement, but the assertion of real claims. And presumably, if both parties had agreed that no claim whatsoever existed, there would have been no compromise of a "claim disputed as to either validity or amount" within the meaning of Rule 408.

statements by witnesses to those accidents. McShain attempted to introduce the reports first as proof of the defectiveness of Cessna's design, and second in support of the request for punitive damages on the theory that the reports established that Cessna had notice of the dangerous character of the landing gear.

As offered to prove Cessna's notice, the excluded evidence cannot affect the outcome of this case. This is so since the jury found that no defect existed in the landing gear, and thus the issue of punitive damages never came before it.

Also, the trial court did not abuse its discretion in refusing to admit the NTSB reports on the issue of defective design.[6] To the extent that the NTSB reports offered by McShain consist of the statements of pilots or other witnesses regarding the accidents, they constitute inadmissible hearsay evidence. The Advisory Committee's Notes make clear that Federal Rule of Evidence 803(8) exempts from the hearsay rule only reports by officials; and of course the pilots and other witnesses are not officials for this purpose. Moreover, the memoranda submitted to the government by its investigators often contained statements from witnesses which would make such memoranda encompass double hearsay.

Insofar as the proffered reports did not fall within the strictures of the Federal hearsay rule, we believe that Judge McGlynn, in refusing to admit the reports, was within the scope of the discretion conferred by Federal Rule of Evidence 403. On the issue of the defectiveness of Cessna's design, the reports primarily proved that similar landing gear had malfunctioned thirty times in the past under comparable conditions. The information that

Cessna landing gear had failed before on at least that number of occasions, however, could have been gleaned from evidence which was in fact admitted.[7]

In addition, reception of such reports into evidence would have involved a lengthy attempt to sift out admissible hearsay, as well as an inquiry into the "circumstances bearing on the trustworthiness" of the investigators' conclusions, Fed.Rule Evid. 803(8)(C). Thus, it may well have been that, in the course of the eighteen-day trial, the additional probative value of the excluded reports was substantially outweighed by the opportunity to avoid undue delay or waste of time. We therefore conclude that refusing to admit the NTSB reports was not "inconsistent with substantial justice." [8]

### C. OTHER CHALLENGES

■ McShain's other contentions may be dealt with more summarily. The argument that the admission of evidence of McShain's parallel suit for rescission violates Federal Rule of Evidence 403 is without merit. Only a mild potential for prejudice has been suggested by reference to the suit, and it cannot be said that it was an abuse of discretion to conclude that the potential prejudice did not substantially outweigh the probative value of the allusion to the state court suit.[9]

■ Likewise, deference to the discretion of the trial court overcomes any merit in McShain's assertion that the qualification of Victor Carluccio as an expert was grounds for a new trial.[10] In light of the fact that McShain had originally listed Mr. Carluccio as its own witness, the offer by Cessna to convey the substance of Mr. Car-

---

**6.** Defendant asserts that use of the reports was barred by 49 U.S.C. § 1441(e). Since we find the reports excludable on evidentiary grounds we need not reach the issue of whether this action "grows out of a matter mentioned in" the reports within the meaning of that statute.

**7.** *See* Exhibits P–104, P–97, D–8.

**8.** *See* F.R.C.P. 61. Here, too, the policy of Rule 403 implies that explicit elaboration of the

judge's reasoning process would have been appropriate.

**9.** *See Construction, Ltd. v. Brooks-Skinner Bldg. Co.,* 488 F.2d 427, 431 (3d Cir. 1973) (construing Rule 403).

**10.** *See Universal Athletic Sales Co. v. America Gym, Recreational and Athletic Co.,* 546 F.2d 530, 531 (3d Cir. 1976).

luccio's proposed expert testimony to McShain cured any prejudice resulting from Cessna's failure to list Mr. Carluccio as a witness in the pretrial memoranda.

■ McShain's hearsay objection to the admission of Cessna's internal memorandum analyzing failure rates of its landing gear was rightfully rejected. The memorandum was admitted not for the truth of its contents but to rebut plaintiffs' introduction of hearsay FAA allegations of landing gear defects. The FAA evidence was offered to prove that punitive damages were warranted because Cessna knew of faults in design but did nothing to cure them. The Cessna report, true or false, is evidence that the FAA allegations were not ignored.

■ Finally we hold that the trial court's refusal to submit interrogatories regarding Cessna's negligence in assisting in repairs was warranted by the fact that the case was tried on a design-defect theory.

The judgment of the district court will be affirmed.