The **PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, Plaintiff-Counterdefendant,**

v.

**CURT BULLOCK BUILDERS, INC., a Nevada corporation, Defendant-Counterclaimant.**

**No. 84 C 3387.**

United States District Court,
N.D. Illinois, E.D.

Dec. 30, 1985.

Guenther M. Philipp, Roger Pascal, J. Mark Fisher, Terence J. Moran, Schiff, Hardin & Waite, Chicago, Ill., for plaintiff-counterdefendant.

Charles C. Hall, Young, Welsch, Young & Hall, Danville, Ill., Edward V. Donovan, Henehan, Donovan & Isaacson, Ltd., Chicago, Ill., for defendant-counterclaimant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This diversity action presents the question of whether a creditor protecting its interests under a loan agreement also could be liable to the debtor in tort if another creditor caused unnecessary economic harm while both were in the process of collection.

Prudential, the plaintiff here, and the First Midwest Bank of Danville, Illinois (formerly the Second National Bank), which is not a party to these proceedings, each loaned defendant Bullock Builders over two million dollars—plaintiff in 1979 and the bank in 1983. By January 1984 both were uneasy about Bullock's financial health. They pressed for changes in management and for security interests in Bullock's assets to put their loans on a sounder footing.

Initially it appeared that a plan satisfactory to all parties had been worked out. Two officers of Bullock were replaced and terms of the proposed security interests were discussed. However, at a meeting on March 26, 1984, Bullock Builders flatly refused to collateralize either loan. Prudential and the bank responded by finding Bullock in default under the respective loan agreements, even though it was not behind in its payments, and announcing acceleration of each loan. Bullock was also a depositor of the bank. Allegedly it had previously sought and received assurances that the bank would not exercise its right of setoff. Nevertheless, the bank at once set the loan amount off against the Bullock checking account. As a result, several Bullock checks were returned for insufficient funds. Negotiations continued, however. In late June and early July, Bullock again seemed near to granting its lenders security interests, but again negotiations broke down. In August, the bank terminated its financing plan for customers of Bullock Builders.

Meanwhile, Prudential filed this suit, seeking a judgment for the loan principal. The bank filed a similar suit in state court. In both actions Bullock filed counterclaims alleging that the accelerations of the loans were not justified, and further, that Prudential and the bank had wrongfully conspired to cause it economic injury. This court has already granted summary judgment to Prudential on its claim. Bullock had violated terms of its loan agreement with Prudential, for example, by allowing working capital to fall below the required minimum, and so was in default. However, the counterclaim remained open. *Prudential Insurance Company of America v. Curt Bullock Builders, Inc.*, No. 84 C 3387 (N.D.Ill. Dec. 24, 1984).

An assortment of motions is presently before the court. Prudential seeks summary judgment on the counterclaim and also moves under Rule 54(b) of the Federal Rules of Civil Procedure for entry of final judgment on its claim. Bullock Builders opposes both the grant of summary judgment and the Rule 54(b) motion, arguing first that no judgment should be entered while its counterclaim is viable, and, secondly, that the amount of the judgment should not include 13 per cent interest and attorneys' fees. Each side has also moved to strike most of the other side's affidavits.

The order in which each of these motions will be discussed is dictated by their practical consequences. Since existence of the counterclaim is a significant obstacle to granting entry of final judgment, the analysis turns first to the counterclaim to see if that obstacle can be removed. The initial step in that analysis will be to determine if Bullock's complaint still states a claim after our earlier judgment for Prudential. Finding that it does, the discussion then must turn to the affidavits, to see what evidence can be considered in the motion

for summary judgment. Those preliminaries will show the key issue to be whether Prudential could be found vicariously liable for the bank's conduct. An examination of that issue indicates that a genuine issue of fact exists as to whether the bank was Prudential's agent or conspired with it. Summary judgment would therefore be premature. The analysis then shifts to the Rule 54(b) motion, finding that despite the counterclaim, final judgment can be entered for Prudential on the loan principal and interest. However, inspection of the loan documents reveals that Prudential is not entitled to attorneys' fees.

## I. THE COUNTERCLAIM

Bullock Builders' complaint is not easily deciphered, but it appears to allege that Prudential conspired with the bank as its agent to drive Bullock Builders out of business. It maintains that Prudential and the bank wrongfully accelerated their loans as one of the acts to further the conspiracy. It also complains that the bank, acting for Prudential, first promised not to use its setoff right, and then exercised it, without warning, making both the bank and Prudential liable, apparently on a promissory estoppel theory. Further, since the setoff was wrongful because of the promise, dishonor of the checks was also wrongful. Also, the bank, as Prudential's agent,

wrongfully deprived Bullock of working capital by luring it away from a potential lender, with promises of a loan on more favorable terms that were never fulfilled.[1]

Prudential argues that it is entitled to summary judgment essentially for two reasons. First, it contends that after this court's previous decision Bullock's complaint no longer states a claim. This court found Bullock in default, so therefore Prudential did not wrongfully accelerate the loan. There was no tortious conduct, but rather conduct justified by the need to protect an economic interest. Secondly, even if there was wrongful conduct, Prudential cannot be liable for it. Except for acceleration of the loan—which was not wrongful—all the acts complained of were taken by the bank, not Prudential. The bank was not Prudential's agent and it did not conspire with the bank, so there is no claim against Prudential.

### A. Issues Remaining in the Counterclaim

■ The counterclaim, however, is not so easily extinguished. A finding that Bullock was in default does not insulate its creditors from all liability. Under Illinois law a lender can have a right to collect from a corporation under the terms of a loan agreement and nevertheless commit a

---

**1.** Defendant has also filed for leave to amend its counterclaim by eliminating the allegations of wrongful acceleration and recharacterizing the theories of recovery. While the amendments defendant has submitted are still not models of pleading clarity, apparently Bullock now claims that the bank and Prudential conspired to tortiously interfere with defendant's business expectancy; that the bank as agent for Prudential intentionally damaged defendant's business reputation by wrongful dishonor of defendant's checks; that Prudential is liable on a promissory estoppel claim for the wrongful setoff by its agent, the bank; and further that Prudential, through its agent, the bank, induced deposits before the setoff by misrepresentation. Such amendment would appear to be within the broad scope of Fed.R.Civ.P. 15(a), which allows amendment freely in the interests of justice. *Twohy v. First National Bank of Chicago,* 758 F.2d 1185 (7th Cir.1985); *see also Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101 (7th Cir. 1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1758,

84 L.Ed.2d 821 (1985). Recasting the same facts into new or additional legal theories is normally an appropriate amendment. *Musikiwamba v. Essi, Inc.,* 760 F.2d 740 (7th Cir.1985); 6 Wright and Miller, *Federal Practice and Procedure: Civil* § 1474 n. 98 (1971). This court need not decide that question today, however. Plaintiff delayed three months before responding to the motion to amend, but defendant has also not appeared to request that it be granted.

The proposed amendments may nevertheless be used as an aid in construing Bullock's original complaint. The federal policy of liberal amendment of pleadings, and the policy of liberal construction of pleadings, share a common rationale: to maximize the opportunity for a claim to be decided on its merits. *Musikiwamba,* 760 F.2d at 753; Wright and Miller, *supra,* § 1471. Flexibility in construction of pleadings is particularly appropriate on a motion for summary judgment. *Cf. WIXT Television, Inc. v. Meredith Corp.,* 506 F.Supp. 1003 (N.D.N.Y. 1980).

tort or breach of contract. *Bank Computer Network Corp. v. Continental Illinois National Bank*, 110 Ill.App.3d 492, 442 N.E.2d 586, 66 Ill.Dec. 160 (1st Dist.1982). In that case, as here, a corporation was both a depositor with and a debtor to its bank. The corporation fell behind in its payments. The bank, however, made no effort to collect and instead engaged in negotiations with the depositor for an extension of the loan, and for additional loans, over several weeks. The depositor, however, was reluctant to give collateralized personal guarantees for the new loans. When the negotiations broke down, the bank immediately took a setoff for the loan against the corporate checking account, dishonoring several checks in the process. In the resulting litigation the bank's motion for summary judgment was denied. The court held that the depositor had a claim under promissory estoppel. The bank had impliedly promised not to enforce its rights at once by its failure to demand payment and its negotiations. It was estopped by those actions from offsetting the account until the depositor had a reasonable time to find other funds with which to pay the loans. 110 Ill.App.3d at 497–500, 442 N.E.2d at 591–592, 66 Ill.Dec. at 165–166. The bank here could similarly be found estopped by the claimed promise not to use its setoff rights. Further, if the bank had no immediate right of setoff, then the resulting dishonor of checks was wrongful and liability would be imposed for the damages proximately caused by the dishonor. Ill.Rev.Stat. ch. 26, ¶ 4–402; *Coles County National Bank v. First National Bank & Trust Co. of Tuscola*, 20 Ill.App.3d 23, 312 N.E.2d 643 (4th Dist.1974) (abstract). In appropriate circumstances a creditor with a loan that is due can nevertheless accelerate wrongfully.

The allegation that Bullock was misled from finding alternative loan sources also could serve as a ground for liability. One of the court's concerns in *Bank Computer* was that the bank's offers of loans could have caused the debtor to forego actively seeking other sources of capital, which it could have used to pay off its debts. 110

Ill.App.3d at 498, 442 N.E.2d at 591, 66 Ill.Dec. at 165. If Bullock indeed had found another willing lender, then it could have been misled to its damage by the bank's actions.

■ Prudential could be found liable for such breach of promise and wrongful dishonor either on an agency or conspiracy theory even if the bank was not at all times following Prudential's orders. A principal is liable for the torts of his agent which are committed either at his orders or within the scope of the agency. *CFTC v. Premex, Inc.*, 655 F.2d 779, 784 n. 10 (7th Cir.1981); *Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill.2d 19, 276 N.E.2d 336 (1971). A conspirator is responsible for the acts of each co-conspirator, whether or not he knew in advance of the precise methods which would be used for the common goal. *Old Security Life Insurance Co. v. Continental Illinois National Bank*, 740 F.2d 1384 (7th Cir.1984). The complaint expressly alleges conspiracy and refers to the bank as Prudential's agent. It therefore states a claim against Prudential by way of either agency or conspiracy.

The counterclaim, then, continues to state viable causes of action under Illinois law, despite this court's earlier ruling. Prudential is correct, however, in noting that these causes rest on conduct of the bank: its alleged promise of additional loans, followed by no loan, and its alleged promise of no setoff, followed by acceleration, setoff and dishonor of checks. If Prudential is not vicariously liable for the bank's acts, then Prudential is not liable, regardless of whatever liability the bank might have. Plaintiff is still entitled to summary judgment if defendant has failed to create a genuine issue of material fact on the question of conspiracy or agency.

We turn, then, to a consideration of whether there is a material issue of disputed fact respecting the bank's purported wrongdoing and Prudential's vicarious liability for any such wrongdoing. Prudential does not rely particularly upon a defense of the bank and the relationship between the

bank and Bullock. Rather, its motion rests upon Prudential's own relationships with the bank and with Bullock.

## B. The Affidavits

That determination of possible vicarious liability cannot proceed without first determining what evidence this court is entitled to examine. Plaintiff has moved to strike several affidavits which describe what was done or said during the many meetings and telephone calls involving Bullock, the bank and Prudential. Defendant has moved to strike affidavits of Prudential employees and bank employees which deny any agency relationship between Prudential and the bank. Under Fed.R.Civ.P. 56(e), both point out, affidavits submitted in connection with a motion for summary judgment are restricted to matters which would be admissible in evidence. Plaintiff argues that some statements are inadmissible, first of all, because they contain argument or are conclusory. Cf. Cohen v. Ayers, 449 F.Supp. 298 (N.D.Ill.1978), aff'd 596 F.2d 733 (7th Cir.1979). Still others are subject to the motion to strike because they are "conduct or statements made in compromise negotiations" barred by Rule 408 of the Federal Rules of Evidence. Defendant's motion attacks some of plaintiff's affidavits by echoing the same grounds. Plaintiff also seeks to block others, such as those containing remarks by bank officers, as hearsay.

It is true that affidavits submitted in conjunction with summary judgment proceedings must generally comply with the rules of evidence. However, in applying these rules the court must not lose touch with a basic principle of summary judgment: to view the evidence strictly against the movant and favorably toward the party opposing the motion. Miller v. Solem, 728 F.2d 1020 (8th Cir.), cert. denied, — U.S. ——, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984); 10A Wright, Miller and Kane, Federal Practice and Procedure: Civil, § 2738 (2d ed. 1983). The goal remains the determination of whether a material issue of fact exists.

■ Under those circumstances, the argumentative and conclusory nature of some affidavits is easily handled. The court is free to disregard inadmissible argument or conclusion in an affidavit, whether a motion to strike has been filed or not. U.S. v. Occi Co., 758 F.2d 1160 (7th Cir.1985). When admissible facts and inadmissible statements occur in the same affidavit, the court need not strike the entire affidavit but rather may rely on the facts and disregard the rest. Cohen, 449 F.Supp. at 321. This court will apply its own judgment to each affidavit, accordingly.

■ The Rule 408 challenge is less easily resolved. At stake are a few acts and statements by Prudential at various meetings which might tend to show an agency or joint relation between Prudential and the bank. Rule 408 is designed to foster full and free discussion in negotiations in order to encourage out-of-court settlements, eliminating much of the concern with technicalities which riddled the common law rule, and should be interpreted with that policy in mind. Ramada Development Co. v. Rauch, 644 F.2d 1097 (5th Cir.1981); 2 Weinstein and Berger, Weinstein's Evidence, ¶ 408[01]. Thus the admission of any statement made during, or any document prepared for, any kind of conciliation effort at least raises a Rule 408 issue. See Occi, 758 F.2d at 1165 n. 6; EEOC v. Air Line Pilots Ass'n, 489 F.Supp. 1003, 1008 n. 4 (D.Minn.1980). On the other hand, the rule does not apply to exclude evidence in at least some situations which may be relevant in this case. A claim must actually be in dispute at the time of the negotiations, and the conduct or statement must relate to that claim. A mere effort to buy time in which to pay an obligation, even though the validity of the obligation is later disputed, is not an attempt to compromise a disputed claim and so does not implicate Rule 408. In re B.D. International Discount Corp., 701 F.2d 1071, 1074 n. 5 (2d Cir.1983). See also Deere & Co. v. International Harvester Co., 710 F.2d 1551, 1556–1557 (Fed.Cir.1983). Bullock apparently did not actively dispute that it

was in default under the loan until Prudential and the bank decided to accelerate.

Further, Rule 408 specifically allows an exception for items used to prove a consequential material fact in issue other than the claim's validity or its amount. So, for example, even the fact of a settlement has been admitted to impeach a witness, *Hennepin County v. A.F.G. Industries, Inc.*, 726 F.2d 149, 153 (8th Cir.1984). Statements made during negotiations were admitted in this circuit to prove notice, with a comment in the opinion that the Rule 408 objection was "ridiculous." *Breuer Electric Manufacturing Co. v. Toronado Systems, Inc.*, 687 F.2d 182, 185 (7th Cir.1982). In the case at bar, the portions of the affidavits which refer to conduct and statements at the various meetings in which the parties attempted to resolve the dispute are offered to show the relation between Prudential and the bank, not to dispute the claim. At least in the era before the federal rules, questions of agency, ownership or control were considered collateral matters on which evidence from settlements could be considered. *Lloyd v. Thomas*, 195 F.2d 486 (7th Cir.1952); *Weinstein*, ¶ 408[05].

Considered in the light of the policy goals which underlie summary judgment, which give the benefit of doubtful questions to the non-moving party, the evidence from the meetings should be considered for purposes of this motion. When evidence that may implicate Rule 408 is offered for a purpose other than impugning the validity of the claim, a court must balance the weight of the policy considerations behind the rule against the need for the evidence. *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 635 (3d Cir.1977); *Reichenbach v. Smith*, 528 F.2d 1072, 1075 (5th Cir.1976). For example, in a dispute over possible construction defects, a report listing alleged defects prepared for negotiations was inadmissible for the purpose of proving those defects. It probably would have been admissible to prove the party's notice of the claimed defects, but other means existed to prove notice, so concern for the policy prevailed. *Ramada*, 644 F.2d at 1107. However, in a case involving defective design of an airplane, evidence of a settlement with a firm not a party to the suit was admitted to show possible witness bias. The court commented that a possible relation to other parties was a matter "not within the core of the public policy that the rule against admission of compromises was designed to vindicate." *McShain*, 563 F.2d at 635 and n. 6. In the case at bar, at this stage of the litigation, the policy favoring the non-moving party at summary judgment would appear to outweigh the Rule 408 policy when the evidence is offered for a purpose outside the core of that policy.

Plaintiff's hearsay challenge to statements of bank officials included in the affidavits also raises a difficult question. Affidavits cannot contain hearsay, but they may include statements which would be admissible at trial under one of the exceptions to hearsay. *Pfeil v. Rogers*, 757 F.2d 850 (7th Cir.1985). If the bank was an agent or co-conspirator, then statements by bank officials are not hearsay but, rather, admissions of a party opponent, as long as they were made during the existence of the agency or conspiracy and within its scope. Fed.R.Ev. 801(d)(2)(D) and (E). But the existence of an agency or conspiracy is precisely what is at issue here. The inquiry seems circular. To determine the issue of agency or conspiracy, this court must first determine admissibility of the affidavits, but it cannot determine admissibility without first making a determination on agency or conspiracy.

However, the circle can be broken. The law of evidence postpones ruling on the out-of-court statements of an alleged agent or co-conspirator until there is proof of the agency or conspiracy from outside these statements. *U.S. v. Silverman*, 771 F.2d 1193 (9th Cir.1985); *U.S. v. Young*, 736 F.2d 565 (10th Cir.1984), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Proof of agency depends on the law of agency. Since in Illinois, as elsewhere, the existence of an agency relation depends on the words or actions of the principal, *Spiegel v. Sharp*

*Electronics Corp.,* 125 Ill.App.3d 897, 466 N.E.2d 1040, 81 Ill.Dec. 238 (1st Dist.1984), the fact of agency cannot be proved by statements of the agent. Therefore, the reputed statements by bank officials in the various affidavits supplied by Bullock Builders cannot come in to prove that the bank was Prudential's agent. *Cf. U.S. v. Bensinger Co.,* 430 F.2d 584 (8th Cir.1970). Similarly, there must be independent evidence of a conspiracy and Prudential's connection to and knowing participation in it before the material is admissible under the rubric for co-conspirators. *Cf. Silverman,* 771 F.2d at 1196–1198 (standard is "substantial evidence of a slight connection"); *U.S. v. Mankani,* 738 F.2d 538 (2d Cir. 1984).

■ Where agency is not in dispute, however, out-of-court statements by an agent are admissible under Rule 801(d)(2)(D). The affidavits supplied by Bullock Builders also include descriptions of the words and actions of Joan Vilim, a vice-president and investment manager for Prudential's loan division, and Mark Fisher, counsel for Prudential. No dispute exists about the fact of their agency. Material in the affidavits about what Vilim and Fisher said and did, therefore, can be used on this summary judgment motion. If it raises a genuine issue on the question of Prudential's relation with the bank, summary judgment cannot be granted.

## C. Agency and Conspiracy

■ Bullock's case for vicarious liability is thin, even including the material from settlement negotiations. However, it does meet the standard for surviving a summary judgment motion since there is just enough evidence to suggest an agency, conspiracy, or, possibly, joint venture relationship between Prudential and the bank.

■ Prudential points out that no document in this transaction expressly makes First Midwest Bank a general agent for all transactions with Bullock. It also offers affidavits from both Joan Vilim and Harold Moe, president of the bank, denying that the bank was Prudential's agent. How-

ever, under Illinois law an agency relation need not be based on express appointment or acceptance. It can be inferred from circumstantial evidence, including the situation occupied by the parties, their acts and other relevant circumstances. *Milwaukee Mutual Insurance Co. v. Wessels,* 114 Ill. App.3d 746, 449 N.E.2d 897, 70 Ill.Dec. 550 (2d Dist.1983); *Szymkowski v. Szymkowski,* 104 Ill.App.3d 630, 432 N.E.2d 1209, 60 Ill.Dec. 310 (1st Dist.1982).

Among the circumstances relevant to proof of agency during a particular transaction is the relationship between the parties before the transaction. In *Kalman v. Bertacchi,* 57 Ill.App.3d 542, 373 N.E.2d 550, 15 Ill.Dec. 204 (1st Dist.1978), an attorney who had previously represented clients in negotiations for a legal dispute reached a settlement for them. The clients later tried to reject the settlement by denying the attorney's authority. The court found that since the attorney had represented these clients to the same party, for the same general transaction, the earlier representation raised a strong presumption that the attorney continued as their agent. 57 Ill.App.3d at 548–549, 373 N.E.2d at 556, 15 Ill.Dec. at 210. First Midwest Bank was Prudential's agent for collection under the original loan agreement. The bank thus was at least a special agent of Prudential's, with limited authority, before the crucial events in March. A trier of fact could reasonably infer that the bank continued as Prudential's agent throughout the period of its dealings with Bullock.

Also relevant to proof of agency is the conduct of the parties. Where one instructs another to act, with the knowledge of the nature of the act, and that party acts consistent with the instructions, Illinois law may find an agency relation and liability in spite of later denial. *St. Ann's Home for the Aged v. Daniels,* 95 Ill.App.3d 576, 420 N.E.2d 478, 51 Ill.Dec. 64 (1st Dist.1981). *See also Ray v. Winter,* 67 Ill.2d 296, 367 N.E.2d 678, 10 Ill.Dec. 225 (1977); *Illinois v. Parsons Co.,* 122 Ill.App.3d 590, 461 N.E.2d 658, 78 Ill.Dec. 74 (2d Dist.1984). According to an affidavit from Randy Bull-

ock, president of Bullock Builders, at the meeting of March 26, Mark Fisher told him that Prudential and the bank were going to offset the checking account of Bullock Builders. Specifically, Fisher allegedly said, "and we are going to set off your money." Richard Shakman, controller of Bullock Builders, heard the same words, according to his affidavit. Since Prudential was not and is not a bank, it could not exercise a right of setoff on its own. If the statement was in fact made, Prudential must have anticipated at least the full cooperation of the bank. Bullock also maintains in his affidavit that Vilim told him by telephone on August 3 that she would tell bank officials to cut off the customer financing plan which the bank offered to Bullock customers. The plan was in fact cut off on August 7. A trier of fact could infer, in both instances, that an order was given and the bank obeyed, making the bank Prudential's agent.

Conspiracy also can be inferred from surrounding circumstances. A conspiracy exists when two or more persons combine for the purpose of accomplishing, through concerted action, either an objective which is itself unlawful or a legal object by means which are unlawful. *Dymek v. Nyquist*, 128 Ill.App.3d 859, 469 N.E.2d 659, 83 Ill. Dec. 52 (1st Dist.1984). While driving a firm out of business is not necessarily an unlawful object, some means which might be used to pursue that end are unlawful, and if the firm is injured by a combination of persons using such means, it has an action against them for conspiracy. *Compare De L'Ogier Park Development Corp. v. First Federal Savings & Loan Ass'n of Berwyn*, 6 Ill.App.3d 807, 286 N.E.2d 583 (1st Dist.1972), *with James C. Wilborn & Sons, Inc. v. Heniff*, 95 Ill.App.2d 155, 237 N.E.2d 781 (1st Dist.1968). The fact of agreement to combine may be deduced from evidence of sufficient concerted action. *Dymek*, 128 Ill.App.3d at 866, 469 N.E.2d at 665, 83 Ill.Dec. at 58. Again according to Randy Bullock, Joan Vilim stated to him, on January 25, 1984, that the bank and Prudential, together, wanted control of a management committee that would operate the company. Also according to Bullock, Vilim and Mark Fisher made demands identical to those of the bank at a meeting on March 16. Further, at the crucial meeting of March 26, attended by Fisher, both the bank and Prudential announced decisions to accelerate their respective loans at 4:55 p.m. Apparently both Prudential and the bank also filed suit against Bullock Builders on the same day— Prudential here, and the bank in state court. A trier of fact again could reasonably infer that Prudential and the bank were in combination for a common goal.

Prudential argues that the bank's behavior is explained by its need to protect its own loan. As the two major creditors of Bullock Builders, Prudential and the bank needed to coordinate their efforts. Both were unsecured creditors with a common interest. Any arrangement which favored one over the other would have been a voidable preference should Bullock file for bankruptcy, as eventually occurred. Legally, however, the bank's parallel interest is irrelevant to the question of the nature of its agency relationship with Prudential. *Tomaso v. Plum Grove Bank*, 130 Ill. App.3d 18, 473 N.E.2d 588, 85 Ill.Dec. 220 (1st Dist.1985). In that case the court found that one lender had acted as agent for another with the debtor, even though no documentary evidence of the relation existed. The proof of agency came from the conduct of both lenders. A trier of fact could decide which inference best explains the conduct of the lenders in the case at bar, but this court cannot choose among reasonable inferences for summary judgment.

Nor would Prudential's explanation automatically preclude its vicarious liability. Surprisingly, Bullock does not suggest the theory that Prudential and the bank were engaged in a joint venture against it. A joint venture is the association of two or more persons to carry out a single enterprise for profit, *Bachewicz v. American National Bank & Trust Co.*, 126 Ill.App.3d 298, 466 N.E.2d 1096, 81 Ill.Dec. 294 (1st Dist.1984). If a joint venture were found,

the law of partnership would govern. Prudential would then be liable for the acts of its fellow venturer, the bank, done in the course of the enterprise, whether or not unlawful acts were involved. *See, e.g., FDIC v. Braemoor Associates,* 686 F.2d 550 (7th Cir.1982). The legal existence of a joint venture does not depend on a formal agreement. It can be inferred from circumstances which indicate mutual intent to carry out an enterprise together. One looks for a community of interest, a proprietary interest in the subject matter and a common right to determine policy toward it, and a sharing of profits and losses. *Palin Manufacturing Co. v. Water Technology, Inc.,* 103 Ill.App.3d 926, 431 N.E.2d 1310, 59 Ill.Dec. 553 (1st Dist.1982). An inference of at least some of these factors, from the evidence here, would not seem unreasonable.

When reasonable persons can disagree on the inferences to be drawn from a set of facts, summary judgment cannot be granted. This court admits that it is troubled by the number and frequency of Randy Bullock's affidavits seemingly appearing as needed to meet legal theories. Summary judgment, however, is not the place to evaluate credibility. A trier of fact could conclude that Bullock Builders' two principal creditors were merely coordinating their conduct to avoid stepping on each other's toes. It could, however, also reasonably find, from the prior and subsequent agency relationship, plus the words, acts and circumstances, that the bank was Prudential's agent with authority to deal generally with Bullock Builders. Alternatively, it could find that Prudential and the bank were in concerted action against Bullock Builders for a common object, as joint venturers or perhaps conspirators. A genuine issue of fact presently exists on Prudential's vicarious liability.

It may still be possible to resolve this claim by summary judgment at a later time. The court notes that there have been no requests for discovery or for depositions on this claim. Evidence beyond affidavits would be helpful in determining whether genuine factual issues exist. Prudential's current motion essentially moves for summary judgment on two grounds: that its conduct has been found not wrongful, and that it cannot be liable for the bank's acts. However, as the above discussion shows, this court's prior finding does not control the outcome of the counterclaim and a genuine issue of fact exists on the question of Prudential's vicarious liability. However, Prudential may yet be able to show that even if it would be liable for the bank's acts, nevertheless that conduct was not wrongful. On the grounds given for the current motion, and on the evidence properly before the court, however, summary judgment must be denied.

## II. ENTRY OF FINAL JUDGMENT

Prudential has also moved for entry of final judgment on its claim on the loan. Final judgment ordinarily is not entered until all claims in a case have been decided, so that, for example, any setoffs can be calculated into the award. However, under Fed.R.Civ.P. 54(b) a party with a favorable judgment may move for its entry even though other claims remain outstanding. A major purpose of the procedure is to allow for timely appeal of a separable issue. However, Rule 54(b) is also used when economic considerations are paramount. A party with a right to a money judgment ought to be able to collect it, unless there is a sound reason for delay. *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).

Bullock Builders opposes the motion in part because it hopes for a setoff from its counterclaim. This court has today found that the counterclaim should remain alive. That decision, however, does not determine the outcome of the motion for final judgment. Even if the claim outstanding is a counterclaim, judgment on the original claim may be granted. *Curtiss-Wright,* 446 U.S. at 9, 100 S.Ct. at 1465. Though the presence of a counterclaim which could yield a setoff against the judgment weighs significantly against

granting the motion, *Architectural Floor Products Co. v. Don Brann & Associates, Inc.,* 551 F.Supp. 802 (N.D.Ill.1982), that is only one of several factors a court should consider. The relationship between the adjudicated claim and the counterclaim, for example, also is important, as are equitable factors such as delay, economic hardship to a party, solvency considerations, expense, and so forth. *Bank of Lincolnwood v. Federal Leasing, Inc.,* 622 F.2d 944 (7th Cir.1980); *Stearns v. Consolidated Management, Inc.,* 747 F.2d 1105 (7th Cir. 1984).

■ A counterclaim, or any other unadjudicated claim, generally is not a barrier to entry of final judgment if it could properly have been severed and tried separately. The "significance [of counterclaims] for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought," and as in severance questions that interrelationship is analyzed factually and legally. *Curtiss-Wright,* 446 U.S. at 9, 100 S.Ct. at 1465. The factual analysis depends not on whether there are any facts in common between the adjudicated and the unadjudicated claim, but rather whether the factual issues "at the heart of" the claims are sufficiently distinct. *International Union of Electrical, Radio and Machine Workers v. Westinghouse Electric Corp.,* 631 F.2d 1094, 1099 (3d Cir.1980), *cert. denied* 452 U.S. 967, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981). *See also Purdy Mobile Homes, Inc. v. Champion Home Builders,* 594 F.2d 1313 (9th Cir. 1979). Here, virtually the only facts in common between claim and counterclaim are the existence of the loan and the fact of acceleration. *Cf. Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.,* 642 F.2d 1065, 1070 (7th Cir.1981). The legal analysis is an evaluation of the extent to which the inquiry into applicable law for each claim would involve duplication of effort if done separately. *Cf. Instituto Nacional de Comercializacion Agricola v. Continental Illinois National Bank,* 576 F.Supp. 991, 1006 (N.D.Ill.1984). Prudential's claim sounds in contract, Bullock's counterclaim in tort, requiring separate legal inquiries to determine liability. Even though the outstanding claim is a counterclaim, it is sufficiently distinct from Prudential's claim that the motion could be granted.

Certification therefore is appropriate here if the equitable factors favor Prudential. Typically they do, when the party seeks to certify a judgment on a promissory note. The lender, having established his right to collect, has an interest in a prompt enforceable judgment. *Bank of Lincolnwood,* 622 F.2d at 951. When the debtor's financial position is precarious, the weight of that interest is increased, since waiting until the trial is over may make the right to collect worthless. *Id.* at 949, 951; *cf. Brann,* 551 F.Supp. at 809. In the instant case, Prudential has a right to collect and Bullock Builders has filed in bankruptcy. There is no just reason for delay. Enforcement of the judgment is stayed by the bankruptcy but it will be a claim payable pursuant to Bullock's plan of reorganization, the parties having indicated that the automatic stay has been modified to permit this court's consideration of the pending motions. Establishing the amount of the claim now will facilitate the progress of the bankruptcy action. Any setoff Bullock might receive can be handled separately when and if Bullock wins a judgment. Entry of final judgment will be granted.

■ That decision requires this court to determine the amount of the judgment. Plaintiff's claim for its money judgment has three components: the loan principal, interest, and the attorneys' fees incurred in the process of collection, including this lawsuit. Prudential's right to the principal of $1,458,000 follows from this court's prior holding. Interest is set by the promissory note at an original rate of 10.5 per cent, with a clause that increases the rate to 13 per cent when "the principal shall have become due and payable." Under paragraph 7 of the loan agreement, a default makes the principal due and payable. Since March 26, 1984, Prudential has calculated the interest at the higher rate, and as

of May 15 $107,123 of interest was outstanding. Following the acceleration, Bullock made two payments at the old rate, which Prudential accepted. Bullock now attempts to argue, without citing any authority, that the new rate is a penalty rate which should not now be imposed because Prudential has waived its right to it. Like Prudential, this court does not understand the argument. Absent some indication of accord and satisfaction, one is normally free to accept partial payment of a debt without abandoning all claim to the rest.

■ Plaintiff's assertion that it is entitled to over $90,000 in attorneys' fees as part of its judgment, however, is another matter. In Illinois, a party is entitled to attorneys' fees only when a statute or contract specifically directs them. *Kerns v. Engelke*, 76 Ill.2d 154, 390 N.E.2d 859, 28 Ill.Dec. 500 (1979); *Rhodes v. Uniroyal, Inc.*, 101 Ill.App.3d 328, 427 N.E.2d 1380, 56 Ill.Dec. 834 (3d Dist.1981). Since no statute is involved here, the right to fees would have to be found in the terms of the loan, either in the promissory note itself or in the loan agreement which accompanied it.

■ Surprisingly, there is no term in either document which gives plaintiff a recovery of attorneys' fees on default and collection. To have a contractual right to attorneys' fees in Illinois, that right must be specifically mentioned in the contract. General promises to pay "costs," "expenses," or the like, are not promises to pay attorneys' fees. *Singleton v. County of Cook*, 53 Ill.App.3d 994, 369 N.E.2d 227, 11 Ill.Dec. 773 (1st Dist.1977) ("loss, damage, or expense"); *Reese v. Chicago, Burlington & Quincy Railroad*, 5 Ill.App.3d 450, 283 N.E.2d 517 (2d Dist.1972), *aff'd* 55 Ill.2d 356, 303 N.E.2d 382 (1973) ("costs"). The principle extends to provisions in contracts which describe remedies following default. In *Qazi v. Ismail*, 50 Ill.App.3d 271, 272, 364 N.E.2d 595, 596, 7 Ill.Dec. 434, 435 (1st Dist.1977), the court found that attorneys' fees were not covered by a clause which read, "In case of any legal action arising out of the above default the party in violation will be responsible for all costs and consequences." The clause in Bullock Builders' note covers only "the expenses arising in connection with the enforcement by holder hereof of any of its rights under this note." Under the strict construction Illinois requires, that clause does not include attorneys' fees.

■ Prudential also argues a promise to pay attorneys' fees on default from another phrase in the loan agreement by which Bullock agreed to pay "all out-of-pocket expenses arising in connection with this transaction, including all stamp and other taxes which may be determined to be payable with respect to the execution and delivery of the note, and the reasonable fees and expenses of your special counsel in connection with this agreement and the note." But this assertion also cannot survive strict construction. Under Illinois law a reference to attorneys' fees somewhere in the document is not enough. In *Thread and Gage Co. v. Kucinski*, 116 Ill.App.3d 178, 451 N.E.2d 1292, 71 Ill.Dec. 925 (1st Dist.1983), the document included a confession of judgment clause with a promise to pay attorneys' fees. The plaintiff had taken legal action but had not proceeded by way of confession of judgment. The court found that he had no right to attorneys' fees. The clause in question here does not appear in a section which deals with default but rather a section called "Miscellaneous." Giving the words their ordinary meaning, the promise refers to attorneys' fees for drafting the agreement and note, not the collection on default. What Illinois law seems to require is standard form book boilerplate, *i.e.*, "if this note is turned over to an attorney for collection, to pay all costs and expenses, including attorneys' fees." Inexplicably, such a phrase never found its way into either the note or the 21-page loan agreement. As a result, attorneys' fees cannot be part of the judgment.

## CONCLUSION

For the foregoing reasons, plaintiff's and defendant's motions to strike affidavits are

granted in part and denied in part during the course of this memorandum. Plaintiff's motion for summary judgment on defendant's counterclaim is denied. Plaintiff's motion for entry of final judgment on its claim is granted for principal and interest, $1,565,123, but not for attorneys' fees.